**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**IRAQIAH MUSAAD,**

       Plaintiff,

                                  CASE NO:

-vs-                           HON:


**MELVINDALE NORTH ALLEN**
**PARK PUBLIC SCHOOLS,** and
**EDUSTAFF, LLC,** jointly and severally,

       Defendants.

---

CAIR-MI LEGAL FUND
By: Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

---

## COMPLAINT AND JURY DEMAND


      Plaintiff, Iraqiah Musaad, by and through her attorney, CAIR-MI Legal fund, by Amy V. Doukoure, file the following Complaint against Defendants, Melvindale North Allen Park Public Schools, and Edustaff, LLC, and aver as follows:

## JURISDICTION, VENUE, AND PARTIES

1.     The jurisdiction of this Court over this controversy is based on 28 U.S.C. §1331, to enforce the provisions of 42 U.S.C. § 1981.

2.      This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to address the claims brought under Michigan's Elliott-Larsen Civil Rights Act. MCLA § 37. 2201-2202,

3.     The venue of this Court over this controversy is based on 28 U.S.C. §1391(d). Defendant EduStaff, LLC ("EduStaff" or "Defendant") is a Michigan corporation doing business in this judicial district within the meaning of 28 U.S.C. §1391(c) and, accordingly, venue lies in this judicial district.

4.     Defendant Melvindale North Allen Park Public Schools ("MELNAP" or "Defendant"), is a local school district formed and operating under the laws of the State of Michigan and is located within this judicial district within the meaning of U.S.C. §1391(c) and, accordingly, venue lies in this judicial district.

5.     Plaintiff Iraqiah Musaad is a Yemeni American visibly Muslim woman who observes the religious head-covering known as "hijab".

## GENERAL FACTUAL ALLEGATIONS

6.   Ms. Musaad was hired by Defendant Edustaff, an outside staffing company to work exclusively at Defendant MELNAP's Julian O. Strong Middle School location on or about the 2014 school year.

7.    Ms. Musaad worked as a bi-lingual facilitator at the school, up until her retaliatory transfer and termination in 2020, where she assisted in facilitating access to the school's vast Yemeni population with translation services in the classroom, between parents and administrators as well as during Individual Education Plan ("IEP") meetings for students with special needs.

8.    While Ms. Musaad is technically a contract worker who is employed by Defendant Edustaff, Melvindale North Allen Public Schools exercises exclusive control of Ms. Musaad's daily schedule, routine, provides her supplies and directions, and has exclusive control over her hiring or termination, making her an employee of both Edustaff and MELNAP under current status of federal and state employment law.

9.    During her employment with MELNAP, Ms. Musaad noticed that students of Arab and Yemeni descent did not receive the same or similar treatment by teachers, administrators and staff including:

a.  Yemeni students receiving harsh or more severe punishment for disciplinary infractions than their non-Arab non-Yemini counterparts;

b.  Yemeni students being bullied in the hallways by other students including race and religious based bullying where students received minimal to no discipline;

      c.  Teachers and administrators making assumptions about the home life of students based on orientalist tropes regarding Arabs and Muslims.

10.  Ms. Musaad often challenged the treatment of the Arab and Yemeni students to administrators, teachers and fellow faculty members, however, her concerns went unheeded.

11.  On or about February 25, 2020, Ms. Musaad witnessed a Yemeni special-needs student with whom she was familiar in the office of the principal. This student was visibly upset, crying and rubbing the bridge of his nose. Ms. Musaad had provided translation services to this student previously because of his limited English proficiency.

12.  When Ms. Musaad inquired of the student what happened, he stated that he was in gym class and had pressed his face against the plexiglass window that separates the locker-room from the gym teacher's office and that the music teacher banged his hand on the other side of the glass hitting him in the face.

13.  After that interaction with the student, Ms. Musaad had not contact with the student for the remainder of the day, but began to inquire as to what was going to happen as a follow up to a teacher who had physically assaulted a student in a manner intended to harass, intimidate and humiliate the student in front of a classroom full of his peers.

14.  Upon information and belief, there was no incident report filed, no state mandated referral of the teacher, and no real investigation into what took place in the locker room.

15.  A few days later, Ms. Musaad became aware that one of the teachers involved in the locker room incident began a campaign of soliciting letters from classmates of the student who had complained about being hit by the music teacher.

16.  From the information received by Ms. Musaad, it appears that the gym teacher was going around interrogating students in the gym class about the behavior of the victim student and then asked those students whom he had a good personal relationship with, or had coached on his athletics teams, to write incriminating letters about the victim student in an effort to have him either disciplined or expelled.

17.  Upon information and belief there are email exchanges between the gym teacher and other teachers and administrators at MELNAP that indicate that the teacher was doing this, and that he was indeed unsuccessful in obtaining a single complaint from any of the female students in the class.

18.  When Ms. Musaad became aware of this campaign to discipline the victim student, she complained to the gym teacher as well as administrators about this fact, and the fact that they were now investigating the victim, but had not even investigated the individual who had engaged in the inappropriate and possibly illegal assault against the victim student just a few days prior.

19.   During Ms. Musaad's email exchange with the gym teacher, she received an admission that indeed the music teacher had preyed upon the Yemini student by smacking the window while he knew that the student's face was pressed firmly against the glass.

20.   Indeed there was further acknowledgement that other student's witnessed and laughed about it, and the teacher further tried to excuse the music teacher's behavior by stating that the victim had initially laughed, but was sent to the office after becoming angry later and throwing a water bottle.

21.   Since the date in February when the student was physically assaulted by the music teacher, there has been no investigation into the music teacher and no discipline of either of the teachers involved.

22.   However, since Ms. Musaad began complaining, the Principal at Strong Middle School, Mr. Fish, has formalized a written discipline against Ms. Musaad as a pretext for justification to remove her from the school as well as towards a path for her termination.

23.   This form of pretextual discipline is a way to retaliate against Ms. Musaad for advocating for the Arab and Muslim students at Respondent's Strong Middle School.

24.   In fact, Ms. Musaad has now been given the choice to either transfer to a different school after five (5) years without discipline and with stellar work or be terminated.

25.   Further, Ms. Musaad was expressly told by administration of MELNAP that she was being transferred out of Strong Middle School as a result of her advocacy for the Muslim, Arab and Yemeni students because the teachers at the school felt like she was going to continue to document and bring to light their discriminatory treatment of the Muslim, Arab and Yemeni students.

26.   Ms. Musaad's discipline is pretextual and shows that she is being subjected to different terms and conditions of employment for the following reasons:

    a.   It claims that she has had several instance of tardiness, but gives no specific accounts and furthermore there are non-Muslim, non-Arab, non-Yemeni teachers, administrators and faculty members who are tardy everyday without just cause, who upon information and belief have never received the same or similar warnings;

    b.   The written warning, the first discipline received by Ms. Musaad in five years, came just days after she began questioning the actions of administrators for not protecting Yemeni Muslim students at the school in light of the music teachers physical violence against a student;

    c.   The written warning came out only after Ms. Musaad challenged statements of teachers who utilized racist, xenophobic, orientalist tropes, when discussing a female Yemeni Muslim student who was bullied on social media by two Caucasian female students;

27.   The letter presents itself as a "last warning" but Ms. Musaad was never given any first warning, not verbal or in writing;

28.   Ms. Musaad was transferred out of Strong Middle School to a different location on or about the same date as the letter, however the letter does not mention the transfer and the school in which Ms. Musaad was transferred to is a place where individuals are known to be transferred prior to being terminated.

29.   At no time prior to her advocacy for the student victim had Ms. Musaad's punctuality been a problem for MELNAP or Mr. Fish.

30.   Upon information and belief, MSP has engaged in targeting Yemeni, Arab and Muslim students and staff.

31.   Upon information and belief, administrators, teachers and faculty nominated students based on their identity as a Yemen, Arab or Muslim student to attend a behavior assembly, and there was no correlation between the behavior of the students and their nomination or acceptance into the assembly was merely based on the students racial, ethnic and religious identity.

32.   Ms. Musaad made her dissatisfaction with the behavior assembly known and notified administrators that she thought that the targeting of students for group discipline along the lines of religion and national origin was discriminatory.

33.  Upon information and belief, the Respondent hired an imam (Muslim religious leader) to come to the school to lecture all of the Yemen, Arab and Muslim

students at Strong Middle School due only to the students classification as Yemen, Arab or Muslim. Ms. Musaad made administration and staff aware that she believed this was a violation of the student's legal and religious rights, and a violation of the Constitution's requirement of separation of church and state.

34.   Upon information and belief, Respondent has not engaged the services of any similarly situated non-Muslim religious leader to come to the school to engage in targeted disciplinary assemblies or lectures for any other religious groups.

35.   Upon information and belief, Ms. Musaad's identity as a Yemeni-American, Muslim, of Arab descent, and her propensity to speak out about the religious and racial targeting of Yemeni, Arab and Muslim students by the Respondent's administrators at Strong Middle School is the sole factor in her negative disciplinary action from Mr. Fish, and the decision of MELNAPto transfer her from Strong Middle School.

36.  Upon information and belief Respondent's employment decisions to discipline her and remove her from Strong Middle school, while other similarly situated individuals remain without discipline and have not been transferred, are based solely one Ms. Musaad's identity as a Yemeni American, Muslim, of Arab descent and in retaliation for her advocating for religious and racial minority students.

37.   Upon information and belief, MELNAP has engaged in a pattern of racist, Islamophobic, xenophobic and orientalist decisions affecting both students and staff, in violation of Title VII, and the Michigan Elliot-Larsen Civil Rights Act.

38.   The pattern of treating Muslim, Yemeni and Arab students differently than similarly situated students of different races, ethnicities and faiths, are overt acts of discrimination which shifts the burden onto MELNAP to show that they had a legitimate business rationale for the decisions taken against Ms. Musaad,,

39.   Any mixed motive decision taken against Ms. Musaad would likewise be in violation of the federal and state civil rights laws, even if the decision was based partly on legitimate grounds.

40.   Ms. Musaad made Defendant Edustaff aware of the discrimination that was taking place at MELNAP, but Edustaff took no steps to stop or otherwise remediate the discrimination that Ms. Musaad was suffering.

41.   Ms. Musaad executed a formal Charge of Discrimination with the Michigan Department of Civil Rights against both Defendants on or about July 15, 2021.

42.   More than 180 days have passed since the filing of those Charges of discrimination being filed with MDCR.

43.   Ms. Musaad was terminated from her employment with MELNAP on or about July 8, 2020 under the pretext that COVID-19 had eliminated the need for her employment.

44.   However, upon information and belief, MELNAP advertised Ms. Musaad's former job title and position and indeed hired someone with the same or similar job classification as Ms. Musaad had at the time of her termination.

## COUNT I
## VIOLATION OF 42 U.S.C. § 1981

45.   Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

46.   At all times relevant to this action, Defendants were prohibited under 42 U.S.C. § 1981 from making any employment decisions regarding Plaintiff which were motivated by Plaintiff's race and/or ethnicity.

47.   In violation of this duty, Defendants  disciplined Plaintiff and terminated her employment because of her  race and/or ethnicity.

48.   The reasons provided for Plaintiff's discipline and  termination were a pretext for race and/or ethnic discrimination.

49.   As a direct and proximate result of Defendants' race and/or ethnic discrimination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff requests the following relief:

a. An order reinstating Plaintiff to her former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

b. Enjoining Defendants from further retaliation against Plaintiff.

c. An order awarding Plaintiff economic and emotional damages, both past and future, in an amount they are found to be entitled to;

d. An order awarding Plaintiff punitive damages;

e. An order awarding Plaintiff interest, costs, attorney fees and litigation expenses;

f. An order granting Plaintiff such other relief as the court deems just and equitable.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RACE/ETHNICITY/NATIONAL ORIGIN DISCRIMINATION

50. Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

51. At all times relevant to this action, Defendants were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from making any employment decisions regarding Plaintiff which were motivated by Plaintiff' race and/or ethnicity and/or national origin or religion.

52.  In violation of this duty, Defendants disciplined Plaintiff and created a hostile working environment before terminating Plaintiff's employment because of her respective race and/or ethnicity and/or national origin.

53.  The reasons provided for Plaintiff's discipline, transfer and  termination were pretext for race and/or ethnic discrimination and/or national origin.

54.  As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff have suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff requests the following relief:

    a.  An order reinstating Plaintiff to their former positions or comparable positions after the discriminatory and retaliatory work environments have been corrected.

    b.  Enjoining Defendants from further retaliation against Plaintiff.

    c.  An order awarding Plaintiff economic and emotional damages, both past and future, in an amount they are found to be entitled to;

    d.  An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

e.   An order granting Plaintiff such other relief as the court deems just and

equitable.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1981
## RETALIATION

55.   Plaintiff incorporates by reference the allegations set forth above as if stated

in full herein.

56.   At all times relevant to this action, Defendants were prohibited under 42

U.S.C. § 1981 from retaliating against Plaintiff for opposing race and/or ethnic

discrimination prohibited by 42 U.S.C. § 1981.

57.   In violation of this duty, Defendant disciplined, transferred Plaintiff prior to

terminating Plaintiff s employment in retaliation for Plaintiff's opposition to

unlawful race and/or ethnic discrimination.

58.   The reasons provided for Plaintiff's discipline, transfer and termination were

a pretext for unlawful retaliation.

59.   As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff

has suffered and will continue to suffer lost wages, and other economic advantages

of employment; Plaintiff has and will continue to suffer mental anguish, humiliation,

physical injury, embarrassment, and emotional distress resulting from the

discriminatory conduct of the Defendants.

Accordingly, Plaintiff requests the following relief:

a. An order reinstating Plaintiff to her former position or comparable position after the discriminatory and retaliatory work environments have been corrected.

b. Enjoining Defendants from further retaliation against Plaintiff.

c. An order awarding Plaintiff economic and emotional damages, both past and future, in an amount she is found to be entitled to;

d. An order awarding Plaintiff punitive damages;

e. An order awarding Plaintiff interest, costs, attorney fees and litigation expenses;

f. An order granting Plaintiff such other relief as the court deems just and equitable.

## COUNT IV
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RETALIATION

60. Plaintiff incorporates by reference the allegations set forth above as if stated in full herein.

61. At all times relevant to this action, Defendant were prohibited under the Elliott-Larsen Civil Rights Act ("ELCRA") from retaliating against Plaintiff for opposing race and/or ethnic and/or national origin discrimination, weight discrimination, and religious discrimination prohibited under the Act.

62.  In violation of this duty, Defendants disciplined and transferred Plaintiff, created a hostile working environment for Plaintiff prior to terminating Plaintiff's employment in retaliation for Plaintiff's opposition to unlawful discrimination prohibited under ELCRA.

63.  The reasons provided for Plaintiff's termination were pretext for unlawful retaliation.

64.  As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendant.

Accordingly, Plaintiff requests the following relief:

a.  An order reinstating Plaintiff to her former position or comparable position after the discriminatory and retaliatory work environments have been corrected.

b.  Enjoining Defendants from further retaliation against Plaintiff.

c.  An order awarding Plaintiff economic and emotional damages, both past and future, in an amount she is found to be entitled to;

d.  An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

e.   An order granting Plaintiff such other relief as the court deems just and

equitable.

## COUNT V
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
## RELIGIOUS DISCRIMINATION

65.   Plaintiff incorporatess by reference the allegations set forth above as if stated

in full herein.

66.   At all times relevant to this action, Defendants were prohibited under the

Elliott-Larsen Civil Rights Act ("ELCRA") from making any employment

decisions regarding Plaintiff Musaad which were motivated by his religion.

67.   In violation of this duty, Defendants disciplined, transferred and created a

hostile working environment for Plaintiff prior to   terminating Plaintiff's

employment because of her religion and observation of Islamic religious practices.

68.  Reasons provided for Plaintiff' terminations were pretext for religious

discrimination.

69.  As a direct and proximate result of Defendants' unlawful discrimination,

Plaintiff has suffered and will continue to suffer lost wages, and other economic

advantages of employment; Plaintiff Musaad has and will continue to suffer mental

anguish, humiliation, physical injury, embarrassment, and emotional distress

resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff requests the following relief

a. An order reinstating Plaintiff to her former position or comparable position after the discriminatory and retaliatory work environments have been corrected.

b. Enjoining Defendants from further retaliation against Plaintiff .

c. An order awarding Plaintiff economic and emotional damages, both past and future, in an amount she is found to be entitled to;

d. An order awarding Plaintiff interest, costs, attorney fees and litigation expenses as provided for under the ELCRA;

e. An order granting Plaintiff such other relief as the court deems just and equitable.

**COUNT VI**
**VIOLATION OF TITLE VII**
**RACE/ETHNICITY/NATIONAL ORIGIN DISCRIMINATION**

70.  Plaintiff incorporate by reference the allegations set forth above as if stated in full herein.

71.  At all times relevant hereto, Plaintiff was an employee and Defendants employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

72.  At all times relevant to this action, Defendants were prohibited under Title VII from making any employment decisions regarding Plaintiff which were motivated by their race, ethnicity, or national origin.

73.  In violation of this duty, Defendants disciplined, transferred and created a hostile working environment prior to  terminating Plaintiff' employment because of her race and/or ethnicity and/or national origin.

74.  The reasons provided for Plaintiff's termination were a pretext for race and/or ethnicity and/or national origin discrimination.

75.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff have and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

76.  Accordingly, Plaintiff request the following relief:

   a.  An order reinstating Plaintiff to their former positions or comparable positions following the correction of discriminatory and retaliatory environment;

   b.  An order awarding Plaintiff' economic and emotional damages, both past and future, in an amount they are found to be entitled to;

   c.  An order awarding Plaintiff' punitive damages as provided for under Title VII;

   d.  An order awarding Plaintiff' interest, costs, attorney fees and litigation expenses as provided for under Title VII;

e.   An order granting Plaintiff' such other relief as the court deems just and

equitable.

## COUNT VII
## VIOLATION OF TITLE VII
## RETALIATION

77.   Plaintiff incorporates by reference the allegations set forth above as if stated

in full herein.

78.   At all times relevant hereto, Ms. Musaad was an employee and Defendants

were employers within the meaning of Title VII of the Civil Rights Act of 1964, as

amended, 42 USC Section 2000 et seq.

79.   At all times relevant to this action, Defendants were prohibited under Title

VII from making any employment decisions regarding Ms. Musaad which were

motivated by Ms. Musaad objecting to race, ethnicity, national origin, or religious

discrimination.

80.   In violation of this duty, Defendants disciplined and transferred Plaintiff, and

further created a hostile working environment prior to terminating Ms. Musaad's

employment because she objected to race and/or ethnicity and/or national origin

and/or religious discrimination.

81.   The reasons provided for Ms. Musaad termination were a pretext for race

and/or ethnicity and/or national origin and/or religious discrimination.

82. As a direct and proximate result of Defendants' conduct, Ms. Musaad has suffered and will continue to suffer lost wages, and other economic advantages of employment; Ms. Musaad has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of Defendants.

Accordingly, Plaintiff requests the following relief:

a. An order reinstating Ms. Musaad to her former position or a comparable position following the correction of discriminatory and retaliatory environment at;

b. An order awarding Ms. Musaad economic and emotional damages, both past and future, in an amount she is found to be entitled to;

c. An order awarding Ms. Musaad punitive damages as provided for under Title VII;

d. An order awarding Ms. Musaad interest, costs, attorney fees and litigation expenses as provided for under Title VII;

e. An order granting Ms. Musaad such other relief as the court deems just and equitable.

**COUNT VIII**
**VIOLATION OF TITLE VII**
**RELIGIOUS DISCRIMINATION**

83.  Plaintiff Musaad incorporates by reference the allegations set forth above as if stated in full herein.

84.  At all times relevant hereto, Ms. Musaad was an employee and Defendants were employers within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 USC Section 2000 et seq.

85.  At all times relevant to this action, Defendants were prohibited under Title VII from making any employment decisions regarding Plaintiff which were motivated by his religion.

86.  In violation of this duty, Defendants disciplined, transferred and created a hostile working environment for Plaintiff prior to terminating Plaintiff's employment because of her religion and observation of Islamic religious practices.

87.  Reasons provided for Plaintiff's termination were pretext for religious discrimination.

88.  As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered and will continue to suffer lost wages, and other economic advantages of employment; Plaintiff Musaad has and will continue to suffer mental anguish, humiliation, physical injury, embarrassment, and emotional distress resulting from the discriminatory conduct of the Defendants.

Accordingly, Plaintiff requests the following relief:

a.  An order reinstating Ms. Musaad to her former position or a comparable position following the correction of discriminatory and retaliatory environments;

b.  An order awarding Ms. Musaad economic and emotional damages, both past and future, in an amount he is found to be entitled to;

c.  An order awarding Ms. Musaad punitive damages as provided for under Title VII;

d.  An order awarding Ms. Musaad interest, costs, attorney fees and litigation expenses as provided for under Title VII;

e.  An order granting Ms. Musaad such other relief as the court deems just and equitable.

Respectfully Submitted,

CAIR-MI LEGAL FUND


/s/ Amy V. Doukoure
Amy V. Doukoure (P80461)
Attorney for Plaintiff
1905 S. Haggerty Road, Suite 5
Canton, MI 48188
(248) 559-2247
adoukoure@cair.com

Dated: November 29, 2021